UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THEOPHILE J. FRANCIS, JR.                    CIVIL ACTION

versus                                       No.  05-1616

BELLSOUTH TELECOMMUNICATIONS, INC.           SECTION: E/5

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This lawsuit arose out of an accident that occurred when plaintiff Theophile J. Francis, Jr. ("Mr. Francis") was unloading a truck at a construction site on October 16, 2003.  Defendant BellSouth Telecommunications, Inc.'s ("BellSouth") employees were repairing telephone lines at or near the same site when one of its employees lost control of a large ladder which fell, striking Mr. Francis on the head, shoulder and back.  A bench trial was held on May 15, 2007.  BellSouth did not dispute liability, and the Court took the issue of quantum under submission.  The parties filed post-trial memoranda on the quantum issue.

The Court, having carefully considered the pleadings, depositions, post-trial memoranda, the testimony and evidence presented at trial, and the record, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, hereby enters the following findings of fact and conclusions of law.  To the extent that any findings of fact constitute a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusions of law constitute a finding of fact, the Court hereby adopts it as such.

1.  Defendant BellSouth is liable for the damages suffered by Mr.

Francis when he was struck by a ladder being handled by a
BellSouth employee at a work site.

2.  Mr. Francis, 61 years old at the time of the accident,
testified at trial that the blow from the ladder knocked him
unconscious for 10 to 15 minutes and cause a bleeding head wound.
After the accident, a BellSouth supervisor was called to the
scene, and Mr. Francis was transported to LakeLand Medical Center
in a BellSouth vehicle for treatment.  X-rays were taken of his
wrist, shoulder, spine and skull.  See Plaintiff's ("P") Ex. 1,
medical records from LakeLand Medical Center.  Mr. Francis was
given an injection for pain and released after treatment.

3.   The following day, October 17, 2003, Mr. Francis went to New
Orleans East Health Care Center where he was treated by several
doctors until his last visit on February 26, 2004.  See Joint
("J") Ex. 2, deposition testimony of Dr. Kenneth Williams.  Dr.
Williams testified that Mr. Francis was seen by Dr. Mogen on
October 17, 2003; by Dr. Auzenne on October 27, November 28,
December 2 and December 30, 2003; and by Dr. Williams on January
27, February 17 and 26, 2004.  J. Ex. 2, p. 12.

4.  Dr. Williams testified, based on his review of Mr. Francis's
chart, that on October 17, 2003, Mr. Francis complained of
bilateral eye pain, right shoulder pain, right wrist pain,
bilateral knee pain, tinnitus and headaches; on October 27 he
complained of neck pain, right shoulder pain, lower back pain and

-2-

headaches.  Id., p. 23.  Dr. Williams first examined Mr. Francis

on January 27, 2004, at which time he diagnosed cervical and

lumbar strain and sprain of the paraspinal muscles.  Id., p. 13.

He testified that the MRI report indicated that Mr. Francis had

cervical, thoracic and lumbar spine degenerative changes, with

some disk space narrowing and multi-level foraminal stenosis,

posterior bulges of C-3 through C-7 and spinal stenosis at C-5

through C-7 disk levels, and similar findings at L-1 through L-5

levels.  Id., pp. 8-9.  The MRI was performed on December 22,

2003, at Clearview Medical Imaging.  P. Ex. 4.

5.   Mr. Francis was treated conservatively with moist heat/cold

packs and cervical traction administered at the New Orleans East

Health Care Center.  J. Ex. 2, p. 15.  Dr. Williams prescribed

Vicodin 10 milligrams for pain, Motrin 600 as an anti-inflammatory,

and Flexoril as a muscle relaxer.  Id., pp. 17-18.  Mr. Francis did

not complain of headaches on any of his three examinations by Dr.

Williams, but complained of neck pain and low back pain.  Id., p.

On February 26, 2004, he was discharged from New Orleans East

Health Care Center and referred to a neurologist.  Id., 39.

6.   Mr. Francis saw Dr. Morteza Shamsnia at the Neurology

Assessment Center from December 16, 2003 through August 2, 2005.

P. Ex. 3; J. Ex. 1., p. 12.  Dr. Shamsnia testified by deposition.

On the first visit, Dr. Shamsnia requested an MRI, EEG, sleep study

and an EMG.  J. Ex. 1, p. 5.  He received reports only of the MRI

-3-

and EMG. Id., p. 6. Dr. Shamsnia testified that the MRI was abnormal, showing some white matter, but very non-specific, id., p. 7, and that the EMG was normal for his neck area, but showed radiculopathies or pinched nerves at the right L-5S-1 levels, id., pp. 8, 12. He further testified that given Mr. Francis's history of multiple automobile accidents and a prior slip-and-fall low back injury, he could not tell whether the findings shown on the MRI and EMG were a direct result of his being struck by the ladder, and that Mr. Francis's brain injury as shown on the MRI was classified as mild head injury or mild post-concussion injury. Id., pp. 10-12, 24, 26-27.

7. Dr. Shamsnia testified that he regularly prescribed Vicodin HP, Klonopin and Viagra for Mr. Francis. Id., p. 13-14. He further testified that the brain abnormalities shown on the MRI would not necessarily cause erectile disfunction, and does not usually do so. Id., p. 224. There is no testimony that, other than requesting certain tests and regularly (about every six weeks) renewing Mr. Francis's prescriptions, Dr. Shamsnia actually provided any specific treatment for Mr. Francis's injuries.

8. Mr. Francis submitted to an independent medical exam by neurologist Dr. John Steck in January, 2007. J. Ex. 3, copy of deposition of Dr. John Steck, p. 19. Dr. Steck testified by deposition that he had received and reviewed the following records prior to his examination of Mr. Francis:

[R]ecords from the Emergency Room at Lakeland Medical Center, reports from October 16th, 2003, a skull E-ray that was normal, and X-ray of the right shoulder, which was read as no posttraumatic change, X-rays of the cervical spine, interpreted as showing a spur formation at 5-6, 6-7, a CT scan of the brain, December 5th, '03, at Clearview Medical Imaging, read by Dr. Taylor, as no significant brain abnormality, an MRI of the brain from Clearview Medical Imaging dated December 22, '03, showing multiple foci with increased signal scattered and white matter evidence of old deep white matter ischemia, which [] could be evidence of cerebrovascular disease but was not traumatic, no evidence of hemorrhage or hematoma or contusion, and MRI of the cervical spine from Open-Sided MRI, dated February 17th, '04, read as showing degenerative changes in the cervical spine, a broad-based posterior disc bulge at 3-4, 4-5, a mild bulge of the disc to the left of the midline at 5-6, mild broad-based symmetric posterior bulges at C6-7, spinal stenosis of the 5-6, 6-7 disc space levels, an MRI of the lumbar spine from Open-Sided MRI, read as showing degenerative changes in the lumbar spine, L5-S1, degenerative changes in the facets at L1-L2, mild spinal stenosis at 2-3, moderate spinal stenosis at 3-4, moderate to severe spinal stenosis on the right side of the spinal canal at 4-5, an MRI of the thoracic spine [that] was read as negative. .... A hearing examination by Dr. Patrick Cecola, showing evidence of severe sensory neural hearing loss, a note from Dr. Sonnier at the Westside Eye Clinic dated [] May 24th, as normal visual fields. .... Also records from Dr. Shamsnia.

Dr. Steck corrected his testimony to say that Dr. Cecola's report actually indicated evidence of moderate to severe sensory neural hearing loss, and further testified that none of the reports relative the X-rays, MRI and CAT scans that he had reviewed indicated any evidence of trauma. Id., at pp. 7-9.

-5-

9.  Dr. Steck testified that Mr. Francis told him that on October 16, 2003, he was working when he was struck on the head and knocked to the ground by a two-story aluminum ladder and was unconscious for 15 minutes and received a scalp laceration.  He further reported that following the accident, he developed headaches, neck pain, pain in his mid back and low back, bilateral upper extremity pain, worse on the left than the right, and bilateral lower extremity pain, that he developed sexual dysfunction and was having difficulty maintaining an erection, and finally, that he had a feeling of being off balance and that he was going to fall forward so he was using a cane to walk.  Id., p. 10.  Dr. Steck described this as a constellation of symptoms, that is, a "kind of diffuse spine pain syndrome following this accident: neck, mid back, low back, arms and legs", and that it makes it very difficult to pinpoint where the true problem is.  Id., p. 10-12.

10.  Dr. Steck's clinical examination found Mr. Francis to be using a cane, but alert, with fluent speech and a good memory of the accident and his treatment.  His cranial nerve was normal, his extraocular movements were normal, his visual fields were normal, he had normal sensation of the face and normal facial nerve function, and normal tongue function.  His motor examination was normal on the upper and lower extremities, and his sensory examination to pin prick in the arms, legs and trunk was normal.  His reflexes were normal in the biceps, triceps, and lower

extremities.   He had a normal but slow gait. His cerebellar examination was normal, as was his balance.   Id., at pp. 12-13.

11.  Dr. Steck testified that he concluded that the degenerative changes noted in the cervical and lumbar spine, "more likely than not, were present before the accident", and that he found no evidence of any type of brain or spinal injury.   He further testified that Mr. Francis's symptoms of neck pain, back pain, arm and leg pain are related to these degenerative problems in his cervical and lumbar spine, and "by history" and in his opinion, were aggravated by the blow to his head.  Id., at pp 14-15, 17.  He testified that in his opinion, such an aggravation would be resolved in three to six months.  Id., at p. 20.

12.  Dr. Steck testified that at the time of his examination, Mr. Francis was managing his "chronic pain syndrome" on his own although it bothered him every day, and that he did not complain of or demonstrate any memory loss or problems.  Id. at p. 19, 21.  Dr. Steck further testified that he could find no medical or structural connection between Mr. Francis's sexual dysfunction and his physical injuries as a result of the accident.  Id., at p. 20.

13.  At trial, Mr. Francis testified that he hurts from the top of his head to his tailbone to the bottom of his feet, and that he walks with a cane because he feels like he will fall all of the time.  He further testified that the accident devastated him, and caused damage to his hearing and his eyesight.

14. Mr. Francis's medical expenses to the date of trial:

```
Lakeland Medical Center Emergency Room . . . . . . $1,449.31
New Orleans East Medical Center  . . . . . . . . . $5,667.00
Dr. Morteza Shamsnia . . . . . . . . . . . . . . . $3,828.00
Clearview Medical Imaging (MRI/CT of the Brain)  . $1,365.00
OpenSided MRI (cervical, thoracic and lumbar MRI) $4,290.00
Taxi receipts (trips to medical providers) . . . . $ 840.00
Prescription medications . . . . . . . . . . . . . $5,900.00
Total  . . . . . . . . . . . . . . . . . . . . . . $20,763.02
```

See P. Exs. 1-7.

15. "Where a defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation." <u>Touchard v. Slemco Electric Foundation</u>, 769 So.2d 1200, 1204, 1999-3577 (La. 10/17/00), *citing* <u>Perniciaro v. Brinch</u>, 384 So.2d 392 (La. 1980).

16. The Court finds that the accident aggravated pre-existing degenerative changes in Mr. Francis's cervical and lumbar spine, causing pain in his neck, back, arms and legs, and headaches, for which he was treated conservatively at New Orleans East Health Care Center from October 17, 2003, until he was discharged on February 26, 2004.

17. The Court further finds that Dr. Shimsnia's treatment of Mr. Francis's continued complaints of pain and sexual dysfunction consisted of managing Mr. Francis's symptomology with prescription medications regularly renewed.

18. The Court further finds that the pain attributable to the aggravation of Mr. Francis's pre-existing cervical and lumbar spine degeneration caused by the blow from the ladder should have

-8-

resolved within six months after the accident, and that there is no medical evidence that the accident caused permanent brain injury, loss of hearing, reduced vision, or sexual dysfunction.

19.   The Court further finds that the bill for OpenSided MRI of New Orleans, see P. Ex. 5, was reduced by $2,790.00 for an "Early Payment Discount", and Mr. Francis is entitled to $1,500.00 for that bill.

20.   The Court reduces Mr. Francis's claim for $5,900.00 for payment of his prescription medications by $2,576.29, the amount paid for his prescriptions for Viagra to treat his sexual dysfunction.  See P. Ex. 7.  He is entitled to $3,323.71 for his prescriptions.

21.  The Court reviewed recent general damages awards in the Louisiana State Fourth Circuit Court of Appeal for damages similar to those suffered by Mr. Francis as a result of the accident.  The results are as follows:

In Neider v. Fontana, 905 So.2d 1160  (La.App. 4 Cir. 6/1/2005), the trial court awarded the plaintiff $15,000.00 in general damages for soft tissue injuries to his neck and back as a result of an automobile accident, and $3,120.35 in medical expenses.  The appellate court affirmed the damage award without further discussion of the extent of the physical injuries or treatment.

In Craige v. Broome, 869 So.2d 242 (La.App. 4 Cir 2/25/2004),

the plaintiff testified that she first went to her doctor the day after she suffered injuries from a physical assault, complaining of neck, arm, shoulder and leg pain; that she was treated with physical therapy for four months; and that she continues to have pain which will probably persist for the rest of her life.  The trial court's award of $15,000.00 in general damages was affirmed on appeal.

In Ice v. Dry Klean Carpet Maintenance Co., 863 So.2d 596 (La.App. 4 Cir. 12/13/2003), the jury awarded $15,700.00 to plaintiff Kiva Dennis, who was injured when the car in which she was a passenger was rear-ended in August 1999.  She had been previously injured in a car accident in April 1998, for which she was treated for low back problems.  After the subject accident, she complained of headaches and shoulder, neck and back pain, for which she was treated in the same manner as she was already being treated for her previous injuries.  The award was affirmed on appeal, when the appellate court concluded that the jury found that Dennis had suffered only new injuries.  There was no mention of special damages.

In Brisbon v. Rhodes Funeral Home, Inc., 814 So.2d 584 (La.App. 4 Cir. 4/12/2001), the appellate court affirmed the trial judge's award to the plaintiff, who had tripped and fallen in defendant's establishment, in the amount of $14,000.00 in general damages and $862.27 for past medical expenses.  Plaintiff was first

treated one day after the accident, when she was diagnosed with neck, back and finger sprains and a left knee contusion.  The plaintiff received additional treatment for her injuries on five occasions over a seven month period.

In <u>Fernandez v. Madej</u>, 784 So.2d 796 (La. App. 4 Cir. 4/11/2001), the appellate court affirmed the trial court's general damages award of $12,500.00.  After plaintiff was injured in an automobile accident, she drove herself to the emergency room a few hours after the accident, where she was diagnosed with blunt head trauma and a knee contusion.  Two days later she saw a doctor who diagnosed post-traumatic sinus headaches, lip laceration/contusion/abrasion, a cervical strain and left shoulder strain.  She was treated conservatively with heated towels and cold packs in the doctor's office for two and a half months, during which time she was examined by her doctor on two occasions.  At trial she testified that she still experienced headaches and pain.

The Court concludes that Mr. Francis is entitled to general damages of $15,000.00 for the aggravation of his pre-existing cervical and lumbar degenerative condition, for which he received four months of conservative treatment with prescription medications and physical therapy, and approximately seventeen months of prescription pain medications.

<u>**CONCLUSION**</u>

Accordingly, judgment will be entered in favor plaintiff and

against defendant on plaintiff's claim for damages in the following

amounts:

1.    Medical expenses:                $17,973.20
2.    General damages:                 $15,000.00
      TOTAL                            $32,973.20

Court costs are assessed against the defendants.

New Orleans, Louisiana, this 24th day of July, 2007.


**MARCEL LIVAUDAIS, JR.**
**Senior United States District Judge**